## Richmond

WILLIE SHOCKET, EXECUTOR UNDER THE LAST WILL AND TESTA-
MENT OF MYER TABAKEN, DECEASED, JACOB TABAKEN AND
CARRIE TABAKEN V. SAMUEL SILBERMAN AND M. DAVID
GRANDIS, EXECUTORS UNDER THE LAST WILL AND
TESTAMENT OF JENNIE TABAKEN, DECEASED,
ET AL.

January 20, 1969.

Record No. 6831.

Present, All the Justices.

*Morton L. Wallerstein* (*Wallerstein, Goode, Adamson & Dobbins,* on brief), for appellants.

*James D. Davis* (*McCaul and Pearsall,* on brief), for appellees.

EGGLESTON, C.J., delivered the opinion of the court.

Willie Shocket, executor under the last will and testament of Myer Tabaken, deceased, filed in the court below a bill against Jacob Tabaken and Carrie Tabaken, residuary legatees under the will, Samuel Silberman and M. David Grandis, executors under the last will and testament of Jennie Tabaken, deceased, and all legatees, devisees and residuary beneficiaries under the latter will, seeking the aid of the court in the proper interpretation of the will of Myer Tabaken. Answers were filed by the executors of the will of Jennie Tabaken and by Beth Sholom Home of Virginia, one of the beneficiaries under the will of the latter, uniting in the prayer of the bill. Jacob and Carrie Tabaken and the other defendants filed no answer and made no appearance in the cause.

The case was submitted on an agreed statement of facts. In a written opinion the lower court gave its interpretation of the will, which was followed by a final decree directing the proper disposition of the estate of Myer Tabaken by his executor. Seventeen days after the final decree had been entered Jacob and Carrie Tabaken tendered in the lower court an answer to the bill and moved that it be filed. The motion to file this answer was denied. From this final decree, embodying the lower court's interpretation of the will, Willie Shocket, the executor, and Jacob and Carrie Tabaken have filed a joint appeal. Their main contention is that the lower court's interpretation of the will is erroneous and prejudicial to the rights of the legatees Jacob and Carrie Tabaken.

Samuel Silberman and M. David Grandis, executors under the last will and testament of Jennie Tabaken, have filed a motion to dismiss the appeal because, they say: (1) in his bill Shocket, as executor under the last will and testament of Myer Tabaken, prayed for the aid and guidance of the lower court in the construction of the will

and has received that relief; the executor has no right to appeal from that decree on the ground that the interpretation is adverse to the rights of certain beneficiaries; (2) Jacob and Carrie Tabaken have no standing to appeal from the decree because they filed no answer and made no appearance in the lower court proceedings, thereby causing the bill of complaint to be taken as confessed as to them; and, further, these appellants neither made nor filed any objections in the lower court to its interpretation of the will.

The right of Shocket, the executor, to appeal from the decree depends upon the interpretation of Code § 8-462 [Repl. Vol. 1957], which specifies in what cases appeals may be awarded. The material portion of this section reads as follows:

"§ 8-462. *In what cases awarded.—*

\* \* \* \* \*

"(2) Any person who is a party to any case in chancery wherein there is a decree or order:

\* \* \* \* \*

"(c) Adjudicating the principles of a cause; or
"(3) Any person thinking himself aggrieved:

\* \* \* \* \*

"(c) By a final judgment, decree, or order in any civil case;
"May present a petition, if the case be in chancery, for an appeal from the decree or order, \* \* \*."

In interpreting this section we have several times pointed out that the "person" there granted the right to appeal from a decree is one who is "aggrieved" thereby. *Snavely* v. *Snavely,* 151 Va. 270, 273, 144 S. E. 422, 423 (1928); *Nicholas* v. *Lawrence,* 161 Va. 589, 592, 171 S. E. 673, 674 (1933); *Stone* v. *Henderson,* 182 Va. 648, 651, 29 S. E. 2d 845, 846 (1944).

In the present case the executor is not aggrieved by the decree from which he seeks an appeal. In his bill he merely asked for the aid and guidance of the lower court in the interpretation of the will and the decree complained of gave him this relief. The interpretation in no way adversely affected the estate represented by the executor. Jacob and Carrie Tabaken are the persons adversely affected. The executor has no right, at the expense of the estate, to seek an interpretation favorable to these legatees.

In 4 Am. Jur. 2d, Appeal and Error § 215, p. 719, it is said: "An

executor or administrator as such is not an aggrieved party where the judgment affects only the rights of beneficiaries among themselves. An executor cannot litigate the claims of one set of legatees against the others at the expense of the estate. * * *" See also, *Ferrell* v. *Basnight,* 257 N. C. 643, 127 S. E. 2d 219, 221, 222 (1962).

The appeal by the executor is dismissed.

█ Inasmuch as the decree interpreting the will of Myer Tabaken is adverse to the rights of Jacob and Carrie Tabaken, they are clearly aggrieved thereby. However, their right to appeal is challenged on the grounds that (1) an appeal does not lie from the decree which has been taken for confessed as to them for their failure to file an answer under Rule 2:8; and (2) they filed no objections to the lower court's decision as required by Rule 1:8.

Rule 2:8 provides: "If a defendant fails to file a pleading within twenty-one (21) days after service on him of the subpoena, the cause is set for hearing and docketed as to such defendant upon the bill taken for confessed as to him."

In Lile's Equity Pleading and Practice, 3d Ed., § 61, pp. 37, 38, it is said that where a bill is taken for confessed "[t]he confession is sufficient proof of all matters of fact properly and specifically pleaded in the bill. If these allegations of fact be sufficiently definite to base a final decree thereon, the plaintiff may have such a decree at once, without further grace to the defendant." See also, 11 Mich. Jurisp., Judgments and Decrees, § 187, pp. 232, 233, and cases there collected.

The appellants Jacob and Carrie Tabaken should, of course, have filed an answer to the bill asserting their claim to the entire estate of Myer Tabaken and denying the right of the estate of the latter's wife to share therein. But the bill filed against these appellants merely alleged such facts as were necessary to give the lower court jurisdiction to interpret the will, and only those facts were admitted by the failure to answer. The lower court was still bound to interpret the will according to its terms notwithstanding such failure to answer.

Under our statute [Code § 8-462, *supra*], specifying in what cases appeals may be awarded, there is no denial of the right of appeal by a defendant from a decree taken for confessed as to him. However, the appellees say that such denial is found in Code § 8-486, which provides that "[a] judgment on confession shall be equal to a release of errors." We do not agree. This latter statute has no application to the situation here. It relates to a judgment by confession

which is based on the express confession or admission of the defendant. *Bank of Chatham* v. *Arendall*, 178 Va. 183, 191, 16 S.E. 2d 352, 355 (1941). Provisions for such judgments by confession are found in Code §§ 8-355 to 8-366, both inclusive. See 11 Mich. Jurisp., Judgments and Decrees, for a discussion and comparison of "Judgments by Confession," § 176 *ff.*, p. 219 *ff.*, and "Judgments by Default and Decrees Pro Confesso," § 186 *ff.*, p. 230 *ff.*

In 30A Am. Jur., Judgments § 198, p. 280, we find this apt statement: "A judgment by default is different and distinct from a judgment by confession. Although decrees by default in equity are referred to as decrees pro confesso, a judgment by default is based, not upon an express confession, but, as the name implies, upon an omission to take a necessary step in the action within the proper time." See also, 49 C.J.S., Judgments § 134, p. 269.

■ Next, the appellees say that the appeal of Jacob and Carrie Tabaken should be dismissed because they filed no objections to the lower court's decision and decree as required by Rule 1:8. We have said that the purpose of this rule and of its antecedent [Rule 22, 187 Va. lxxix] is to protect the trial court and to that end to compel litigants to present to the appellate court the same objections urged upon the lower court. *Norfolk Southern R.R. Co.* v. *Lewis*, 149 Va. 318, 323, 141 S.E. 228, 229 (1928); *Trent* v. *Commonwealth*, 155 Va. 1128, 1138, 156 S.E. 567, 570 (1931), and cases there collected. But the requirements of this rule are not inflexible, and as indicated therein may be relaxed "to enable this Court to attain the ends of justice." *Newton* v. *City of Richmond*, 198 Va. 869, 872, 96 S.E. 2d 775, 778 (1957).

As has been said, seventeen days after the final decree had been entered, but within the time allowed by Rule 2:22 for its modification or vacation, the appellants Jacob and Carrie Tabaken tendered in the lower court and asked leave to file their answer in which they asserted that under the will of Myer Tabaken they were the "sole beneficiaries because Jennie Tabaken did not survive her husband, Myer Tabaken, ninety days."

We need not decide whether the lower court acted within its sound judicial discretion in refusing to permit the filing of the answer tendered by Jacob and Carrie Tabaken. For the purpose of determining whether we should hear their appeal "to attain the ends of justice," the tendering of the answer, the motion that it be filed, and the denial of the motion by the lower court, all occurring before

the decree became final, were sufficient to set forth in the record, for the attention of the lower court and this court, the position upon which these appellants rely in claiming that the lower court erred as a matter of law in the interpretation of the will of Myer Tabaken.

We think that because of these related circumstances and "to attain the ends of justice" we should entertain the appeal of Jacob and Carrie Tabaken with respect to a proper interpretation of the will. Consequently the motion to dismiss their appeal is denied.

The facts pertinent to a proper interpretation of the will of Myer Tabaken may be stated thus: Myer Tabaken died without issue on April 15, 1966 and his will, dated February 3, 1958, was admitted to probate on April 28, 1966. Willie Shocket, one of the named executors, qualified. The estate consisted only of personalty. Article III of the will reads:

> "I give, devise and bequeath to my wife, Jennie Tabaken, provided she shall survive me, one-third of all my property, real and personal of whatever nature and wherever located.
>
> "In the event my said wife, Jennie Tabaken, shall die with me in a common accident or disaster or under such circumstances as make it impossible or difficult to determine which of us died first or within ninety days after my death, I direct that my wife shall be conclusively deemed not to have survived me and the provision herein made for her shall become a part of the rest and residue of my estate.
>
> "The provision made for my said wife shall be in lieu of dower and all other rights of whatever nature, whether statutory or otherwise, which she may have against my estate, whether or not passing under this will, and her election to claim any such rights shall result in the forfeiture of all benefits which she otherwise would have received under this will."

Article IV provides for the bequest of the residue of the estate to the testator's brother, Jacob Tabaken, and his wife, Carrie Tabaken, or to such of them as may be living at the time of the testator's death.

Jennie Tabaken, the wife of Myer Tabaken, died on April 26, 1966, eleven days after her husband's death, and her will dated February 3, 1958, the same date as the will of her husband, was probated on May 18, 1966. Both wills were drafted by a member of the bar of the city of Richmond and executed on the same day.

. The death of Jennie Tabaken, which occurred within ninety days of the death of her husband, was not the result of a common accident or disaster with him and was in no way related to his death.

In the will of Jennie Tabaken there was a provision that her husband, Myer Tabaken, should receive one-third of the net proceeds of her estate "provided he should survive" her. In language the same as that found in Article III of the husband's will it provided the conditions upon which he should be conclusively deemed not to have survived her. It also provided for other bequests with which we are not here concerned. The rest and residue of her estate were left in equal shares to her nephews and nieces.

We find no substance to the contention of the appellants that the will of Myer Tabaken and that of his wife, Jennie Tabaken, should be construed as mutual wills with the result that neither would have any right in the estate of the other unless they were killed in a common accident or disaster or it could not be determined which died first or whether there was survivorship for a period of ninety days. As the lower court pointed out in its memorandum opinion, there is no evidence to support a conclusion that the wills were made pursuant to such an agreement.

We think that the purpose and intent of Article III of the will of Myer Tabaken are to be determined from the words used by the testator. If the language used is clear and unambiguous, as we think it is, it must be taken to express the intent of the testator and must be given effect unless it violates some rule of law. 20 Mich. Jurisp., Wills § 81, p. 252 ff. Indeed, the lower court correctly proceeded upon that principle in its interpretation of the Article.

The substance of the contention on behalf of Jacob and Carrie Tabaken is that the gift to the wife in the first paragraph of Article III is conditioned upon her surviving him: "I give, devise and bequeath to my wife, Jennie Tabaken, provided she shall survive me, one-third of all my property;" that under the second paragraph of the Article she is "conclusively deemed not to have survived" the testator if any one of the events specified in the alternative occurs: "In the event my said wife, Jennie Tabaken, shall die [1] with me in a common accident or disaster or [2] under such circumstances as make it impossible or difficult to determine which of us died first or [3] within ninety days after my death" [emphasis added]; and that the last specified event occurred when she died within ninety

days of the death of the testator. Consequently, it is said, the wife took nothing under the first paragraph of the Article.

In its written opinion the lower court thus interpreted the provisions of the second paragraph of Article III: "The plain intent is that should the testator and his wife die in a common *accident* or *disaster*, in which both were present, and not in separate or unrelated accidents, she shall be conclusively deemed not to have survived him; or that, if the circumstances of the common disaster were such that it would be difficult or impossible to determine which of them had died first, she shall be deemed not to have survived him; and that, if both of them had not died simultaneously, or nearly simultaneously, and if she had died *as a result of the common disaster* and within ninety days after his death *as a result of the common disaster*, she shall be conclusively deemed [not]¹ to have survived him. But both died of natural causes and not in or as a result of a common disaster, or indeed of any accident. Therefore, the common disaster clause never became operative."

In our view this interpretation is not in accord with the plain intent of the testator. It will be observed that in its interpretation the lower court has connected the common disaster phrase with the ninety days' phrase by the conjunctive "and." Under its interpretation there is a presumption of no survivorship should the husband and wife die in a common accident or disaster "*and* within ninety days after his death" [emphasis added], whereas the testator's language states this and the preceding conditions disjunctively by the use of the word "or." The testator says, in effect, that there is a presumption of no survivorship in the event that they die in a common accident or disaster, *or* in the event it is impossible to determine which died first, *or* in the event that she died within ninety days of his death.

It is true that in construing a will "or" may be read as "and" if that be the plain intent of the testator as shown by a reading of the instrument as a whole. For example: a devise to "A *or* his heirs" will be construed to read to "A *and* his heirs" if that be the plain intent of the will. *Tiffany* v. *Thomas,* 168 Va. 31, 35, 190 S. E. 101, 103 (1937). Conversely, in the absence of such plain intent the change is not permissible. *Gray* v. *Francis,* 139 Va. 350, 362, 124 S. E. 446, 450 (1924).

---

¹ The appellees' brief interpreted the quotation as including the word "not" which is missing in the manuscript and printed record.

In the present case there is nothing in the language used in Article III, or in any other portion of the will, to indicate that the word "or" in the survivorship clause was intended to be used by the testator in any other sense than its ordinary disjunctive meaning. Giving the word that disjunctive meaning, it is obvious that the alternative condition of the survivorship occurred when the wife did not survive the testator for a period of ninety days. Consequently the gift to her in the first paragraph of Article III, which is conditioned upon her survivorship, did not occur and she took nothing under the will. Under Article IV the residue of the testator's estate passed to the testator's brother, Jacob Tabaken, and his wife, Carrie Tabaken.

The decree appealed from will be reversed and the cause remanded for a distribution of the estate of Myer Tabaken in accordance with the views here expressed.

*Reversed and remanded.*