Present: All the Justices

CESAR DAVID HUAMAN

v.  Record No. 051798       OPINION BY JUSTICE DONALD W. LEMONS
                                          June 8, 2006
ALDO HUAMAN AQUINO, ET AL.

            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                      Paul F. Sheridan, Judge

     In this appeal, we consider whether the trial court erred

in ruling that settlement proceeds from a lawsuit filed in

Washington, D.C. that came into the testator's estate should

be distributed as personal property under the will.

                  I.  Facts and Proceedings Below

     In 1999, Carmen Hilda Ore Aquino ("testator") died

testate and was survived by her six brothers.  After specific

bequests, her will directed that her remaining real and

personal property be shared equally among three of her

brothers:  Carlos Manuel Ore Aquino, Virgilio Oscar Huaman

Aquino, and Aldo Dionicio Huaman Aquino ("Carlos," "Oscar,"

and "Aldo").  A residuary clause directed that the remainder

of her estate be distributed "to [her] brothers in equal

parts."  The will designated two co-executors, her attorney

Gracelia R. Helring ("Helring") and her brother Cesar David

Huaman Aquino ("Huaman").[1]  The will was submitted to probate

_____

     [1] The will erroneously referred to Huaman as the
testator's nephew, but it is undisputed by the parties that he
is, in fact, one of the six surviving brothers.  Further, we

in Arlington County, Virginia, where Helring and Huaman qualified as co-executors of the estate.

Two years prior to her death, the testator suffered serious injuries during an apartment building fire in Washington, D.C.  Thereafter, she was unable to care for herself, and spent the remainder of her life (when not hospitalized) with Huaman in Arlington, Virginia.  She filed a personal injury action in Washington, D.C. against the company that managed the apartment building seeking damages caused by the fire, however she died while the litigation was pending. After her death, the suit was amended to include both survival and wrongful death counts under the law of the District of Columbia.  The suit was settled, and the net proceeds of the settlement to the estate were $1,778,578.

The sole dispute in this case arose when portions of the settlement proceeds were distributed from the estate.  The first distribution occurred in July to August 2000 when $100,000 distributions were paid equally to Oscar, Aldo, and Carlos, totaling $300,000 from the settlement proceeds. Huaman and Helring disagreed about the mode of distribution because Huaman maintained that the settlement proceeds should be shared equally among all the surviving siblings.

<hr>

note that Huaman chose not to use "Aquino" during this appeal, and instead has identified himself by "Huaman" for clarity. We will do the same.

Nevertheless, he took no formal action because the siblings actually shared the initial distribution equally pursuant to an oral agreement. Pursuant to the agreement, Oscar, Aldo, and Carlos each paid $50,000 to the other three siblings: Huaman, Franklin Gustavo Aquino ("Franklin"), and Rafael Javier Huaman Aquino ("Rafael").

The next distribution occurred during January and February 2003, when Helring paid $300,000 each to Oscar, Aldo, and Carlos, totaling $900,000 from the settlement proceeds. On this occasion, only Oscar paid half of his distribution, $150,000, to his brother Franklin. Aldo and Carlos decided to keep their full distribution, and this dispute ensued.[2]

Upon Huaman's demand that Helring cease any further distributions from the estate, she filed a "Motion to Construe a Will" in the Circuit Court of Arlington County. Huaman and Helring were the parties to that action. The Honorable Joanne Alper entered an order on March 7, 2003, favoring Huaman's interpretation of the will that each sibling should share the settlement proceeds equally pursuant to the residuary clause of the will. Thereafter, Helring resigned as co-executor of the estate, and Huaman qualified as the sole executor.

---

[2] No further distributions have been made from the settlement proceeds that remain in the estate.

Huaman sent demand letters to Oscar, Aldo, and Carlos notifying them of the court's ruling and directing them to return their 2003 distributions to the estate for re-distribution.  They did not reply.  Huaman then filed a Bill of Complaint against the other five siblings seeking a declaratory judgment regarding the interpretation of the will, imposition of a constructive trust upon the 2003 distributions paid from the estate, or alternatively judgment against Carlos, Oscar, and Aldo on the basis of unjust enrichment totaling $900,000.

The Honorable Paul F. Sheridan vacated the March 7, 2003 order entered by Judge Alper holding that the court had lacked jurisdiction because all necessary and indispensable parties were not before the court at the time.  Upon the arguments concerning the interpretation of the will, the trial court held that "the lawsuit that existed prior to [the testator's] death and the settlement proceeds are personal property, governed by the [personal property paragraph] of the Will."  As a result, the trial court ordered that the settlement proceeds be shared equally among the three beneficiaries designated in the personal property clause:  Oscar, Aldo, and Carlos.  Huaman's appeal to this Court is limited to one assignment of error:  whether the trial court erred when it held that the settlement proceeds, obtained after the death of

4

the testator, should pass to the beneficiaries according to the personal property clause rather than the residuary clause.

## II. Analysis

We note at the outset that the facts presented in this case create an uncommon scenario that would be impossible to duplicate under Virginia law governing personal injury actions. It is well settled in the Commonwealth that an action for personal injury does not survive death, and our wrongful death statute creates a new right of action brought on behalf of the statutory beneficiaries, and not the estate. E.g., Wilson v. Whittaker, 207 Va. 1032, 1035, 154 S.E.2d 124, 127 (1967); Richmond, F. & P. R. Co. v. Martin, 102 Va. 201, 203, 45 S.E. 894, 894 (1903). Our analysis in this case is affected by the law of the District of Columbia and no part of this opinion is intended to disturb the well-developed law pertaining to actions for personal injury and wrongful death in Virginia.

There is only one matter to be resolved in this appeal: the proper distribution of the settlement proceeds that came into the testator's estate several years after her death. During the course of the litigation below, none of the parties maintained that the settlement proceeds were improperly paid into the estate. Additionally, the parties have relied solely upon Virginia law for the resolution of this matter.

5

Therefore, we are guided by familiar principles expressed in our case law.

"The cardinal principle of will construction is that the intention of the testator controls; the problem is to ascertain it." Gillespie v. Davis, 242 Va. 300, 303, 410 S.E.2d 613, 615 (1991) (citing Clark v. Strother, 238 Va. 533, 539, 385 S.E.2d 578, 581 (1989)). The testator's intent should be determined from the language of the document, when possible. Id. (citing Baker v. Linsly, 237 Va. 581, 585, 379 S.E.2d 327, 329 (1989)). The disagreement regarding the language of the will in this case centers upon whether the personal property clause or the residuary clause controls the distribution of the settlement proceeds.

The trial court held that the third paragraph of the will controls the distribution. It states in pertinent part:

> Personal property: I give, devise and bequeath to my brothers, Carlos Ore Aquino, Oscar Huaman Aquino and Aldo Huaman Aquino, in equal parts, share and share alike, all the personal property I own or over which I have disposing power at the time of my death, including funds in any and all financial accounts.

Huaman concedes that the settlement proceeds constitute personal property. However, he argues the personal property clause does not control because the testator neither owned nor had power to dispose of such property, namely the proceeds, at

6

the time of her death – an express restriction of the personal property clause.

Huaman argues that the residuary clause must control the distribution of the settlement proceeds. It provides:

> All the rest residue and remainder of my estate, real, personal or mixed, of whatever nature and wherever situate, I give, devise and bequeath to my brothers in equal parts, share and share alike.

By contrast, appellees maintain that the "cause of action" was personal property that the testator owned before her death; consequently, the distribution must be under the personal property paragraph.

The provisions of this will are not ambiguous. Thus, the resolution of this appeal centers upon whether the testator "owned" or had "power to dispose" of the personal property in question at the time of her death. The trial court held that "[t]he cause of action predating the death of the Testator was an item of personal property she owned." We agree. The testator's personal injury claim was a chose in action, "a personal right not reduced into possession, but recoverable by a suit at law." First Nat'l Bank v. Holland, 99 Va. 495, 503-504, 39 S.E. 126, 129 (1901); Richmond v. Hanes, 203 Va. 102, 106, 122 S.E.2d 895, 898 (1961) ("a right to damages arising ex delicto is recognized as being a chose in action"). A chose in action is intangible personal property. E.g., Teed v. Powell,

7

236 Va. 36, 40, 372 S.E.2d 131, 134 (1988); Iron City Sav. Bank v. Isaacsen, 158 Va. 609, 628, 164 S.E. 520, 526 (1932).

A chose in action is "owned" by the possessor of the right to recover, and generally such ownership can be bequeathed in a will. See Teed, 236 Va. at 40, 372 S.E.2d at 134 (testator's security interest was chose in action passing under the will); Koss v. Kastelberg, 98 Va. 278, 281-82, 36 S.E. 377, 378 (1900) (choses in action used in connection with testator's business passed under the will). Ordinarily, a personal injury action is an exception to this general rule because it expires at the moment a person bringing such action dies. Richmond, 203 Va. at 106, 122 S.E.2d at 898. However, in this instance the chose in action did not expire under the laws of the District of Columbia. For this reason, the general rule, rather than the exception, is applicable here. This particular chose in action was "owned" at the moment of the testator's death, and accordingly the proceeds derived from the action pass under the personal property clause to Carlos, Oscar, and Aldo.

Huaman argues that a bequest of this sort is tantamount to an "assignment" of the personal injury action that violates Virginia law. However, he failed to raise this argument in the trial court. We will not consider matters raised for the

8

first time on appeal.  Rule 5:25; <u>see</u> <u>also</u> <u>Cangiano v. LSH</u>
<u>Bldg. Co.</u>, 271 Va. 171, 183, 623 S.E.2d 889, 896 (2006).

## III.  Conclusion

For these reasons, we hold that the testator "owned" her personal injury action at the time of her death, that it was a chose in action that survived her death pursuant to the law of the District of Columbia, and the proceeds obtained from the settlement should pass under the personal property clause of her will.  Therefore, Carlos, Oscar, and Aldo are entitled to equal shares of the settlement proceeds.  We will affirm the judgment of the trial court.

<u>Affirmed</u>.